**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALLEGHENY COUPLING COMPANY, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> BETTS INDUSTRIES, INC., ) <br> ) <br> Defendant. ) <br> ) <br> ) | C.A. No. 06-76 Erie <br> District Judge McLaughlin |

**MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., J.

**I.   Background**

Pending before the Court is a document filed by Plaintiff Allegheny Coupling Company ("Allegheny") styled a Motion for Amendment of Finding of Fact and Relief from Order Pursuant to Fed. R. Civ. Pro. 52(b) and 60 (hereinafter, "Motion for Amendment/Relief") (Doc. No. 141). Also pending before the Court is Defendant Betts Industries, Inc.'s ("Betts") Renewed Application for Attorney Fees and Costs Pursuant to Opinion and Order of March 31, 2011 (Doc No. 144). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338 and 1367.

By way of background, Allegheny commenced the instant action on March 24, 2006 alleging, *inter alia*, trademark and trade dress infringement in violation of the Lanham Trademark Act, 15 U.S.C. § 1051 et sq. ("Lanham Act") and various state law claims including conversion of property. See Allegheny Coupling Co. v. Betts Industries, Inc., 2011 WL 1230151, *1 (W.D. Pa. 2011) ("Allegheny III"). Allegheny and Betts also each sought a declaratory judgment as to the ownership of certain

1

manufacturing equipment which both parties claimed to legally own.  Id.  Following three amended complaints by Allegheny, each containing the same trademark and trade dress infringement claims, Betts moved for summary judgment.  (Doc. Nos. 76).  On March 18, 2010, the Court granted summary judgment in favor of Betts as to Allegheny's remaining federal Lanham Act claim[1] and declined to exercise jurisdiction over the pendent state law claims.  (Doc. No. 86).  See Allegheny Coupling v. Betts Industries, Inc., 2010 WL 1068199 (W.D. Pa. 2010) ("Allegheny I").

Following entry of judgment, Betts filed a Motion for Attorney Fees and Costs Pursuant to 15 U.S.C. § 1117(A)(3). (Doc. No. 88) ("Attorney Fee Motion").  On May 30, 2010, Allegheny filed a motion to strike Betts' request for attorney fees and costs, arguing that Betts was not a "prevailing party" entitled to attorney fees within the meaning of the Lanham Act.  (Doc. Nos. 98-99).  On June 30, 2010, Allegheny's motion to strike was denied.  (Doc. No. 107).  See Allegheny Coupling v. Betts Industries, Inc., 2010 WL 2640140 (W.D. Pa. 2010) ("Allegheny II").

An evidentiary hearing on Betts' Attorney Fee Motion was commenced on November 18, 2010 and concluded on December 15 and 16, 2010.  Based on evidence adduced at the hearing, the Court granted Betts' Attorney Fee Motion.  Allegheny III, 2011 WL 1230151, *9.  Specifically, we concluded that the circumstances surrounding this litigation were sufficiently "exceptional" to warrant an attorney fee award pursuant to § 1117(A)(3) of the Lanham Act[2] based upon Allegheny's pursuit of a "patently frivolous and groundless" trade dress claim and Allegheny's "intentional failure to have turned over any documentation relative to its failed attempt to register the "Allegheny," "Allegheny Coupling Co," and "Allegheny Coupling" marks on the Principal Register." Id. at **8-9.  Betts was instructed to provide the Court with documentation of the fee

---

[1] In its response to Betts' motion for summary judgment, Allegheny withdrew its trade dress infringement claim.

[2] The applicable subsection of the Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a)(3).

award requested and the reasonableness of that fee. In response, Betts filed an Application for Attorney Fees and Costs (Doc. No. 144). Allegheny, after seeking and obtaining leave to challenge the amount of Betts' fee request, filed a brief in opposition as well as the instant Motion for Amendment/Relief. Each of the aforementioned motions is fully briefed and ripe for review.

## II. Allegheny's Motion for Amendment/Relief

Allegheny's Motion for Amendment/Relief is based on Rules 52(b) and 60 of the Federal Rules of Civil Procedure. Rule 60(a) provides that a court may, within a reasonable time, "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. Pro. 60(a). Rule 60(b) permits a court to "relieve a party . . . from a final judgment, order, or proceeding" based upon "mistake, inadvertence, surprise, or excusable neglect," "newly discovered evidence," "fraud . . ., misrepresentation, or misconduct by an opposing party," or "any other reason that justifies relief." Fed. R. Civ. Pro. 60(b). A request for relief made pursuant to the "any other reason" provision of Rule 60(b)(6) must demonstrate that "extraordinary circumstances" justify the requested relief. Sawka v. Healtheast, Inc., 989 F.2d 138 (3rd Cir. 1993); Ackermann v. United States, 340 U.S. 193, 199 (1950).

Rule 52(b) provides that a party may petition the court to "amend its findings – or make additional findings" in a bench proceeding after the court has issued findings of fact and conclusions of law. Fed. R. Civ. Pro. 52(a),(b). A Rule 52(b) motion is "not a vehicle for relitigation of issues previously adjudicated," see Wound Care Centers, Inc. v. Catalane, 2011 WL 3476612, **2-3 (W.D. Pa. 2011) (citing FEDERAL PRACTICE AND PROCEDURE § 2582 at 352-53 (3d 2008)), and may not "be employed to introduce evidence that was available at trial but was not proffered, to relitigate old issues, to advance new theories, or to secure a rehearing on the merits." Fontenot v.

3

Mesa Petroleum Co., 791 F.2d 1207, 1219 (5th Cir. 1986). Rather, the purpose of such a motion is to "correct manifest errors of law or fact" contained in findings or conclusions arising from such proceedings. Lyons v. Jefferson Bank & Trust, 793 F.Supp. 989, 991 (D. Colo. 1992). Moreover, the showing of "manifest injustice" required by Rule 52(b) is similar to the standard required of a Rule 59(e) motion to alter judgment. Power Integrations, Inc., v. Fairchild Semiconductor Int'l, Inc., 762 F.Supp.2d 710, 717 n. 4 (D.Del.2011) (citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3rd Cir.1995)). Consequently, the well-established standard applicable to a motion pursuant to Rule 59(e) is instructive:

> A proper motion to alter or amend judgment "must rely on one of three major grounds: "(1) an intervening change in controlling law; (2) the availability of new evidence [not available previously]; or (3) the need to correct clear error [of law] or prevent manifest injustice."

North River Insurance, 52 F.3d at 1218.

Here, Allegheny does not contend that there has been an intervening change in controlling law or that new, previously unavailable evidence has become available. Neither has Allegheny asserted mistake, inadvertence, surprise, fraud, or excusable neglect. Rather, Allegheny claims that the factual findings made by the Court in granting Betts' motion for attorney fees were clearly erroneous. In so doing, however, Allegheny relies entirely upon the same arguments that it had previously raised on several occasions in response to Betts' efforts to obtain attorney fees (Doc. Nos. 92, 113, 132, 138). As set forth in the March 31, 2011 Memorandum Opinion granting Betts' motion, we concluded that each of Allegheny's arguments was not supported by the record and/or otherwise lacked merit. We find no error, clear or otherwise, in our

previous factual findings and legal conclusions. Consequently, Allegheny's Motion for Relief/Amendment is denied.

### III. Betts' Application for Attorney Fees and Costs

In our previous opinions, we concluded that Betts was a "prevailing party" within the meaning of the Lanham Act, see Allegheny II, 2010 WL 2640140, and that the circumstances surrounding this litigation were sufficiently "exceptional" to warrant an attorney fee award pursuant to § 1117(A)(3) of the Lanham Act, see Allegheny III, 2011 WL 1230151. Betts is now seeking a total award of $277,801.80 representing $256,377.60 in attorney and paralegal fees[3] and $21,424.20 in litigation expenses.[4] Betts has supported its request by supplying counsels' time records, bills, invoices, and an affidavit from Roger Taft, Esq,[5] averring that the hourly rates billed by Betts' counsel are at or below the rates customarily charged in the local geographic area by attorneys of similar experience and law firms of similar size.

Allegheny does not challenge the reasonableness of the hourly rate charged by Betts' counsel or claim that the total number of hours expended in this litigation was excessive. Instead, Allegheny primarily contends that Betts is only entitled to a fee award for activities related to the "trade dress claim, which alone was found to have

---

[3] The basis for these figures will be explained *infra*.

[4] Recovery of expenses and costs in a Lanham Act action does not depend on "exceptional circumstances," but rather, is "subject to the principles of equity." 15 U.S.C. § 1117(a). Thus, the trial court has "equitable discretion to award costs" in an amount that is appropriate. See, e.g., Jama Corporation v. Gupta, 2008 WL 108671, *9 (M.D. Pa. 2008) (quoting MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:107).

[5] Counsel for Betts, Richard A. Lanzillo and Neal R. Devlin, are currently partners in the firm of Knox McLaughlin Gornall and Sennett, Inc., located in Erie, Pennsylvania. See Application for Attorney Fees, Ex. A. Attorney Taft is a partner in the firm of MacDonald, Illig, Jones & Britton LLP, an Erie, Pennsylvania law firm of comparable size offering a similar commercial litigation practice. (Doc. No. 137). In his affidavit, Attorney Taft concludes that the fees charged by Betts' counsel are consistent with the rates typically charged by similarly-experienced attorneys in the area. Id.

been frivolous . . .". See Plaintiff's Supplemental Brief in Opposition, at 1. After concluding that the nature of the time records submitted by Betts made it impossible to distinguish between actual time spent on trademark versus trade dress claims, Allegheny suggests that Betts' fee request should be reduced by over 90% based on its observation that "the subject of trade dress was addressed in only 160 pages of [deposition] testimony" out of the 1,355 pages of total testimony taken during depositions in this litigation. Id. at 3.

Apportionment of a fee award is a familiar concept in Lanham Act cases. For instance, it is well-settled that, as a general matter, "a prevailing party in a case involving Lanham Act and non-Lanham Act claims can recover attorneys' fees only for time spent litigating the Lanham Act claims." Gracie v. Gracie, 217 F.3d 1060, 1069 (9th Cir. 2000); U.S. Structures, Inc. v. J.P. Structures, Inc., 130 F.3d 1185, 1193 (6th Cir. 1997) ("[U]nder 15 U.S.C. § 1117(a), attorneys' fees are recoverable only for work performed with claims filed under the Lanham Act."). Thus, when an action involves both Lanham Act and non-Lanham Act claims, the court has a duty to "make some attempt to adjust the fee award to reflect an apportionment" between work performed on the Lanham Act claims and work performed on the other claims. Safeworks, LLC v. Teupen America, LLC, 2010 WL 3033711, *3 (W.D. Wash. 2010) (citing Cairns v. Franklin Mint Co., 292 F.3d 1139, 1157-58 (9th Cir. 2002)); see also Jama Corporation v. Gupta, 2008 WL 108671 (M.D. Pa. 2008) (noting that, "[a]lthough the Third Circuit Court of Appeals has not ruled as to the requirement of apportionment between Lanhan Act and non-Lanham Act claims, numerous courts have held that apportionment is required.").

Courts have also held that apportionment may be appropriate where a party "prevails on some but not all of its claims under the Lanham Act." Cairns, 292 F.3d at 1157-58. In the instant action, however, Betts wholly prevailed on each of the Lanham Act claims asserted by Allegheny. Specifically, Count One of Allegheny's Third Amended Complaint alleged trademark infringement with respect to four purported trademarks. Count Two alleged trade dress infringement with respect to hundreds of product configurations. Allegheny I, 2011 WL 1230151, **1-2, 8. None of those claims survived summary judgment.

Nonetheless, as noted above, Allegheny contends that the Court should apportion Betts' fee award between legal activities related to those Lanham Act claims which involved "exceptional" circumstances or culpable conduct and those which it suggests did not. However, Allegheny has not cited any legal authority to support this contention, nor has the Court's research found any. Section 1117(a) of the Lanham Act is a fee shifting provision which shifts fees from one party to another based on "the extent to which that party actually prevailed," see Beckman Instruments, Inc. v. LKB Produkter AB, 892 F.2d 1547, 1554 (Fed. Cir. 1989), rather than as a sanction for "incidents of litigation abuse." See Securacomm Consulting, Inc. v Securacom Inc., 224 F.3d 273, 282 (3rd Cir. 2000) (affirming an award of attorney fees pursuant to the Lanham Act). As noted by the Third Circuit, "the Lanham Act fee provision is distinct from Rule 11 as a basis for fees in part because it 'looks to the whole of the case' rather than to small segments of the ligitation." Securacomm, 224 F.3d at 282 (quoting Lieb v. Topstone Industries, Inc., 788 F.2d 151, 158 (3rd Cir. 1986)). Having established

exceptional circumstances pursuant to § 1117(a), Betts is entitled to its reasonable attorney fees related to the defense of each of Allegheny's Lanham Act claims.

Turning now to the specifics of Betts' fee request, our starting point is the familiar "lodestar" calculation which is arrived at by "multiplying the number of hours reasonably expended on litigation times a reasonable hourly rate."[6] Blum v. Stetson, 465 U.S. 886, 888 (1984).  The attorneys who performed legal work for Betts in this case, primarily lead counsel Richard Lanzillo and co-counsel Neal Devlin, have each submitted documentation of their hourly rates and the number of hours that they have expended in this litigation.  The most recent entries on the docket reflect that Attorney Lanzillo devoted a total of 806.8 hours to this litigation, billed at an hourly rate of either $200.00 (for hours billed on or before December 31, 2008) or $250.00 (for hours billed after that date).  See Application for Attorney Fees, Ex. A, ¶¶ 15, 19, 22; Supplement to Application, Ex. A.  Attorney Devlin billed a total of 630.8 hours at a rate of $175.00 per hour (for hours billed on or before December 31, 2008), $200.00 per hour (for hours billed between January 1, 2009 and February 28, 2010), $225.00 per hour (for hours billed after March 1, 2010), and $235.00 per hour (for hours billed between April 1, 2011 and May 13, 2011).  See Application for Attorney Fees, Ex. A, ¶¶ 15, 20, 22; Supplement to Application, Ex. A.  The docket also reflects that another attorney, Emily

---

[6] Although Allegheny does not challenge the reasonableness of the rates billed by Betts or claim that the total number of hours expended in this litigation by Betts' counsel was excessive, we note that our independent review of the time sheets, invoices, bills, and the affidavits submitted by Attorney Lanzillo and Attorney Taft reflect that the rates billed by Betts' counsel are well within the range of what would be considered reasonable for attorneys and paralegals of equivalent skill and experience in this community. See, e.g., Maldonado v. Houstoun, 256 F.3d 181, 184 (3rd Cir. 2001) (noting that the reasonableness of an hour rate is based upon "the experience and skill of the prevailing party's attorney" and "the prevailing market rates in the relevant community"). We also conclude, given the complexity of the case and the extensive discovery and motion practice, that the total hours expended by Betts' counsel were not unreasonable.  Public Interest Research Group of N.J., Inc. v. Windall, 51 F.3d 1179, 1188 (3rd Cir. 1995) (stating that the reasonableness of hours expended is determined by "review[ing] the time charged, decid[ing] whether the hours claimed were reasonably expended for each of the particular purposes described, and then exclud[ing] those that are 'excessive, redundant, or otherwise unnecessary.'") (quoting Hensley v. Eckerhart, 461 U.S. 424, 432 (1983)).

E. Mosco, billed 11.6 hours at a rate of $100.00 per hour. See Supplement to Application, Ex. A. An additional 130 hours was billed by paralegals at a rate of either $65.00 or $75.00 per hour. See Application for Attorney Fees, Ex. A, ¶¶ 16, 21, 22; Supplement to Application, Ex. A. Multiplying the total hours by the applicable billable rate produces an initial lodestar figure of $306,445.00.[7] Betts has also documented total litigation costs of $23,804.67. See Application for Attorney Fees, Ex. A, ¶¶ 31; Supplement to Application, Ex. A and B.

     Given that fees which are incurred in connection with state law claims are not recoverable, counsel for Betts has voluntarily excluded the following hours which they have identified as related exclusively to the defense of the non-Lanham Act claims: 69.5 hours from Attorney Lanzillo, 26.5 hours from Attorney Devlin, and 8.9 paralegal hours. See Application for Attorney Fees, Ex. A, ¶ 32. Excluding those hours reduces the calculated fee for all activities which Betts alleges were related exclusively to Lanham Act claims from $306,445.00 to $284,864.00. Betts' counsel has volunteered to reduce this fee amount (as well its litigation costs) by an additional 10% to account for any activities relating exclusively to state law claims that might not have been identifiable from its time sheets. Id. at ¶ 32. Accepting this voluntary deduction would result, as discussed above, in a requested fee award of $256,377.60 and costs in the amount of $21,424.20, for a total of $277,801.80.

---

[7]     Allegheny contends that Betts is not entitled to recover fees and expenses incurred in conjunction with its pursuit of the fee award. We disagree. See Gilbreth Int'l. Corp. v. Lionel Leisure, Inc., 622 F.Supp. 478, 483 (E.D. Pa. 1985) (noting in a patent case that "recent authorities have determined that [fees incurred in the preparation of a fee petition itself] are properly included in an award"); In re Fine Paper Antitrust Litigation, 751 F.2d 562, 595 n. 26 (3rd Cir. 1984) ("[I]n litigated statutory fee cases, fee petition is, of course, properly included in the lodestar."); Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant, 771 F.2d 521, 528 (D.C. Cir. 1985) ("Hours reasonably devoted to a request for fees are compensable" in a Lanham Act case); Wiesenberger v. Huecker, 593 F.2d 49 (6th Cir. 1979) (same); Bretford Mfg., Inc. v. Smith System Mfg. Co., 421 F.Supp.2d 1117 (N.D. Ill. 2006) (same).

Having carefully reviewed the record, however, we conclude that a larger reduction than that suggested by Betts is warranted. Although Allegheny's Lanham Act claims were the primary focus of this litigation, state law claims represented seven of the nine counts of Allegheny's Third Amended Complaint and formed the subject of extensive discovery and briefing at summary judgment, particularly with respect to the parties' cross-motions for declaratory relief with respect to ownership of certain manufacturing equipment and product lines. See, e.g., Defendant's Brief in Support of Motion for Summary Judgment, Doc. No. 77, pp. 35-44. Moreover, in reviewing the individual billing entries contained in Betts' submissions, many of the entries are vague with respect to the specific subject matter of the work performed. For example, numerous entries indicate that counsel performed "legal research" or "reviewed documents" without indicating to which claims the research or documents pertained. See, generally, Application for Attorney Fees, Ex. B. It is well-settled that "[i]t is incumbent on the fee applicant . . . 'to maintain billing records in a manner that will enable a reviewing court to identify distinct claims.'" McKenna v. City of Philadelphia, 582 F.3d 447, 458 (3rd Cir. 2009) (quoting Hensley, 461 U.S. at 437). Here, the nature of many entries is such that a differentiation between the Lanham Act claims and the non-Lanham Act claims is difficult, if not impossible.

Based on the above analysis, we will reduce Betts' requested award of $277,801.80 by an additional 30%, resulting in a total award of $194,461.26. See Application for Attorney Fees, Ex. A; Supplement to Application, Ex. A.

## IV.     Conclusion

For the reasons stated herein, Allegheny's Motion for Relief/Amendment is denied.  Betts' Application for Attorney Fees is granted.  Attorney fees and costs are awarded in favor of Betts in the amount of $194,461.26.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALLEGHENY COUPLING COMPANY, )<br>)<br>  Plaintiff, )<br>  v. )<br>)<br>BETTS INDUSTRIES, INC., )<br>)<br>  Defendant. )<br>)<br>) | C.A. No. 06-76 Erie<br>District Judge McLaughlin |

## **ORDER**

AND NOW, this 27th day of September, 2012, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Betts' Application for Attorney Fees is GRANTED. Allegheny's Motion for Relief/Amendment is DENIED. Attorney fees and costs are awarded in favor of Betts in the amount of $194,461.26.

IT IS SO ORDERED.

/s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record. ___